FILED

2022 Sep-22  PM 03:41
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| PRISCILLA FIELDS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 2:20-cv-00088-SGC |
| | ) | |
| T-MOBILE, | ) | |
| | ) | |
| Defendant. | ) | |

## <u>MEMORANDUM OPINION</u>[1]

This is an employment discrimination case.  The plaintiff, Priscilla Fields, claims the defendant, T-Mobile, discriminated against her based on her disability, in violation of the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12112 – 12117 (the "ADA").  (Doc. 1).  The plaintiff is proceeding *pro se*.  Pending before the court are (1) a motion for summary judgment filed by the plaintiff, (2) a motion for summary judgment filed by the defendant, and (3) the defendant's motion to strike the plaintiff's reply in support of her summary judgment motion as untimely.  (Docs. 41, 46, 48).  For the reasons stated below, the plaintiff's motion for summary judgment is due to be denied; while the defendant's motion to strike is due to be denied, its motion for summary judgment is due to be granted; and this action is due

---

[1] The parties have consented to the exercise of dispositive jurisdiction by a magistrate judge pursuant to 28 U.S.C. § 636(c).  (Doc. 12).

to be dismissed with prejudice.

## I. Material Facts[2]

T-Mobile hired the plaintiff in July 2017 to work in its Birmingham, Alabama call center. (Doc. 46-3 at ¶ 3). The plaintiff described during her deposition what she perceived to be harassment by her supervisors and co-workers that led her to file a charge of age discrimination with the U.S. Equal Employment Opportunity Commission (the "EEOC") at an unspecified time in 2018 and take one or more leaves of absence that year. (Doc. 46-4 at pp. 7, 14-22, 25-26). She then requested and began a "continuous" medical leave of absence in February 2019. The plaintiff testified leave is "continuous" when an employee is absent from work for an uninterrupted number of days, while leave is "intermittent" when an employee attends work with certain accommodations. (Doc. 46-4 at p. 53). Records maintained by T-Mobile indicate the plaintiff requested a period of continuous medical leave from February 13, 2019, to March 11, 2019. (Doc. 46-5 at p. 41). The plaintiff testified the period of leave she requested was open-ended. (Doc. 46-4 at p. 48).

Broadspire, a Crawford Company ("Broadspire"), is responsible for reviewing and either approving or denying a T-Mobile employee's leave request.

---

[2] The following facts are undisputed, unless otherwise noted. They are viewed in the light most favorable to the non-movant, with the non-movant given the benefit of all reasonable inferences.

(Doc. 46-3 at ¶ 5).   Broadspire notified T-Mobile on March 8, 2019, that it had denied the plaintiff's request for a continuous medical leave of absence.  (Doc. 46-3 at ¶ 6).   T-Mobile communicated the denial to the plaintiff by a letter sent to the plaintiff's e-mail address on March 11, 2019.  (Doc. 46-3 at ¶ 7; Doc. 46-3 at p. 6).  The letter advised the plaintiff that her request for a continuous medical leave of absence had been denied because her health care provider did not support the request.  (Doc. 46-3 at p. 6).   The letter instructed the plaintiff that on or before March 15, 2019, she must either (1) contact T-Mobile to confirm her intent to return to work on her next scheduled work day or (2) request an extension of her leave of absence and provide documentation to support the request.  (Doc. 46-3 at p. 6).  The letter warned the plaintiff that her failure to comply with those instructions within the time prescribed would be construed as a voluntary resignation of her employment that would be processed effective March 16, 2019.  (Doc. 46-3 at p. 6).[3]

Contained within T-Mobile's records are two forms completed by the plaintiff's psychiatrist, Dr. Christopher Stanley, in February 2019.  (Doc. 46-5 at pp. 16-21).   Dr. Stanley noted diagnoses of depression and anxiety for the plaintiff, asserted he had not advised the plaintiff to stop working, and stated in multiple form

---

[3] While T-Mobile uses the term "separation" to describe the action that ended the plaintiff's employment, the court will use the term "discharge" in the interest of consistency and for ease of reference.  To the extent there is a distinction between the terms, it is a distinction without a difference for purposes of this memorandum opinion.

fields that the plaintiff could return to work with "intermittent leave," which he described as "brief" breaks during the day to recover from anxiety attacks and one or two days off per month for the plaintiff to manage depression. (Doc. 46-5 at pp. 17-19).

When deposed by T-Mobile's counsel, the plaintiff presented her own copies of these forms. (Doc. 46-4 at pp. 31-34, 52-54, 60-62; Doc. 46-6 at pp. 12-13; Doc. 46-5 at pp. 23-28). The plaintiff's forms are the same as the versions maintained by T-Mobile with one exception: the last page of one form purportedly was amended on March 21, 2019, to reflect that the plaintiff required a period of continuous leave until April 11, 2019, at which time Dr. Stanley would re-evaluate her. (Doc. 46-5 at pp. 23-28).[4,5] The plaintiff maintains she provided the amendment to T-Mobile, through Broadspire, "in a timely manner" and prior to her discharge. (Doc. 46-4 at pp. 41, 56).

T-Mobile has presented a declaration the plaintiff neither contacted T-Mobile

---

[4] To be clear, elsewhere in the plaintiff's copies there remain notations Dr. Stanley had not advised the plaintiff to stop working and that the plaintiff could return to work with accommodations in the form of brief breaks during the day and one or two days off per month. (Doc. 46-5 at pp. 23-25).

[5] Faced with this inconsistency, T-Mobile sought copies of the forms kept by Dr. Stanley. (Doc. 46-8 at ¶¶ 3-5; *see also* Doc. 28, 34). The forms maintained by Dr. Stanley are the same as those in T-Mobile's files: they indicate Dr. Stanley had not advised the plaintiff to stop working and that the plaintiff could return to work with accommodations in the form of brief breaks during the day and one or two days off per month. (Doc. 39 at pp. 4-9; Doc. 46-8 at ¶ 13). They contain no purported amendment to these opinions. (Doc. 39 at pp. 4-9; Doc. 46-8 at ¶ 12).

nor provided the amendment to T-Mobile, through Broadspire, prior to her discharge. (Doc. 46-3 at ¶¶ 9, 10, 13). T-Mobile discharged the plaintiff on March 16, 2019. (Doc. 46-3 at ¶ 12).

After her discharge, the plaintiff applied for unemployment compensation and social security benefits. She received unemployment compensation for a period of time, but her application for social security benefits was denied. (Doc. 46-6 at ¶¶ 5-8). The plaintiff also filed a charge of disability discrimination with the EEOC and thereafter commenced this lawsuit. (Doc. 46-5 at p. 2). In the present action, the plaintiff claims (1) T-Mobile failed to accommodate her disability, which she identifies as anxiety, by denying her request for a continuous medical leave of absence, (2) discharged her because of her disability, and (3) in discharging her, retaliated against her for filing the 2018 EEOC charge alleging age discrimination, all in violation of the ADA. (Doc. 1; *see also* 46-4 at pp. 28-29).

## II. Procedural History

After the plaintiff filed her motion for summary judgment, the court entered an order requiring the defendant to file a response to the motion by May 6, 2021, and the plaintiff to file any reply by May 20, 2021. (Doc. 44 at p. 2). The court advised the parties the briefing schedule set out in the court's initial order would apply to any motion for summary judgment filed by T-Mobile. (Doc. 44 at pp. 2-3). The defendant filed a response to the plaintiff's motion for summary judgment on

May 6, 2021.  (Doc. 45).  The defendant then filed its own motion for summary judgment on June 4, 2021.  (Doc. 46).  Also on June 4, 2021, the plaintiff filed a submission captioned as a response in opposition to T-Mobile's response to the plaintiff's motion for summary judgment.  (Doc. 47).[6]  In the parlance of the court, the submission is a reply in support of the plaintiff's summary judgment motion.  On June 8, 2021, T-Mobile filed a motion to strike the reply as untimely.  (Doc. 48). The plaintiff has not filed a substantive response to T-Mobile's motion for summary judgment.

## III. Motion to Strike

The plaintiff filed her reply in support of her summary judgment motion only two weeks late.  Given the relatively brief nature of the delay and because consideration of the reply neither saves the plaintiff's summary judgment motion from denial nor rebuts the showing made by T-Mobile in its own summary judgment motion, T-Mobile's motion to strike is due to be denied.

## IV. Motions for Summary Judgment

### A. Standard of Review

The standard of review for cross motions for summary judgment is the same as when only one party files a motion for summary judgment.  *S. Pilot Ins. Co. v.*

---

[6] Although the submission was docketed as filed on June 4, 2021, the certification of service is dated June 3, 2021.  (Doc. 47 at p. 6).

*CES, Inc.*, 52 F. Supp. 3d 1240, 1242-43 (citing *Am. Bankers Ins. Grp. v. United States*, 408 F.3d 1328, 1331 (11th Cir. 2005)).  Under Rule 56 of the Federal Rules of Civil Procedure, "[t]he [district] court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).  The party seeking summary judgment bears the initial burden of informing the district court of the basis for its motion and identifying those portions of the record the party believes demonstrate the absence of a genuine dispute as to a material fact.  *Celotex Corp.*, 477 U.S. at 323.  If the moving party carries its initial burden, the non-movant must go beyond the pleadings and come forward with evidence showing there is a genuine dispute as to a material fact for trial.  *Id.* at 324.

The substantive law identifies which facts are material and which are irrelevant.  *Anderson*, 477 U.S. at 248.  A dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the non-movant.  *Id.* at 248.  If the evidence is merely colorable or not significantly probative, summary judgment is appropriate.  *Id.* at 249-50 (internal citations omitted).  All reasonable doubts about the facts should be resolved in favor of the non-movant, and all justifiable inferences

should be drawn in the non-movant's favor.  *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993).

"[T]he district court cannot base the entry of summary judgment on the mere fact that the motion was unopposed, but, rather, must consider the merits of the motion."  *United States v. One Piece of Real Prop. Located at 5800 SW 74th Ave., Miami, Florida*, 363 F.3d at 1099, 1101 (11th Cir. 2004).  A district court does this by ensuring the motion is supported by evidentiary materials and that the standard for granting summary judgment is otherwise satisfied.  *Id.* at 1101-02.

**B. Discussion**

The court notes here that the plaintiff cites no evidence in her motion for summary judgment or reply in support of that motion.  (Docs. 41, 47).  Both submissions largely contain bare legal conclusions.  (Docs. 41, 47).  The court also notes T-Mobile has made multiple arguments why it is entitled to summary judgment on the plaintiff's claims.  (Doc. 46-1).  The court declines to address arguments other than those discussed below, which are dispositive of T-Mobile's motion.

**1. ADA Discrimination Claims**

The ADA prohibits an employer from discriminating against an employee on the basis of her disability.  § 12112(a).  A plaintiff asserting an ADA discrimination claim must show (1) she has a disability, (2) she was a "qualified individual," meaning she could perform the essential functions of her job, with or without

reasonable accommodation, and (3) she was discriminated against because of her disability. *Lucas v. W.W. Grainger, Inc.*, 257 F.3d 1249, 1255 (11th Cir. 2001).

### a. Failure to Accommodate Claim

The term "discriminate" is defined by the ADA in such a way as to include an employer's failure to provide a reasonable accommodation to a disabled employee. § 12112(b)(5)(A). An employee bears the burden of identifying an accommodation that would allow her to perform her job and demonstrating the accommodation is reasonable. *Stewart v. Happy Herman's Cheshire Bridge, Inc.*, 117 F.3d 1278, 1286 (11th Cir. 1997). If the employee shows a reasonable accommodation exists, the employer may defeat the claim by presenting evidence the requested accommodation would impose an undue hardship on the employer. *Terrell v. USAir*, 132 F.3d 621, 624 (11th Cir. 1998).

" 'The use of the word "reasonable" as an adjective for the word "accommodate" connotes that an employer is not required to accommodate an employee in any manner in which that employee desires.'" *Stewart*, 117 F.3d at 1285 (quoting *Lewis v. Zilog, Inc.*, 908 F. Supp. 931, 947 (N.D. Ga. 1995)). "Stated plainly, under the ADA a qualified individual with a disability is 'not entitled to the accommodation of her choice, but only to a reasonable accommodation.'" *Id.* at 1286 (quoting *Lewis*, 908 F. Supp. at 948).

The Eleventh Circuit has explained " 'an "accommodation" is "reasonable" – and, therefore, required under the ADA – only if it *enables* the employee to perform the essential functions of the job.' " *Edwards v. Wellstar Med. Grp.*, 2022 WL 3012297, at *6 (11th Cir. July 29, 2022) (quoting *LaChance v. Duffy's Draft House, Inc.*, 146 F.3d 832, 835 (11th Cir. 1998)) (alteration adopted). "To 'enable' means 'to make someone able to do something' or 'to make something possible.' " *Id.* (quoting *Enable*, Cambridge English Dictionary Online (2022)) (alteration adopted). It follows that a disabled employee seeking an accommodation from her employer must show the accommodation is "necessary – in that the accommodation 'make[s] [it] possible' for her to do her job." *Id.* "The corollary is that, 'if an employee does *not* require an accommodation to perform her essential job functions, then the employer is under no obligation to make an accommodation, even if the employee requests an accommodation that is reasonable and could be easily provided.' " *Id.* (quoting *D'Onofrio v. Costco Wholesale Corp.*, 964 F.3d 1014, 1022 (11th Cir. 2020), *cert denied*, 141 S. Ct. 1435 (U.S. 2021)) (alteration adopted).

The request made by the plaintiff here for a leave of absence – whether it was for a defined period or an open-ended period – was not reasonable or required because the plaintiff did not demonstrate prior to her discharge that a leave of absence was necessary for her to do her job. *See Richio v. Miami-Dade Cnty.*, 163 F. Supp. 2d 1352, 1364 (S.D. Fla. 2001) (holding employer had no obligation to

accommodate employee by granting her an uninterrupted period of leave where employee did not provide documentation from her psychotherapist to support the requested accommodation).   Perhaps more to the point, she demonstrated the opposite.   The forms completed by Dr. Stanley and submitted to Broadspire indicated Dr. Stanley had not advised the plaintiff to stop working, and Dr. Stanley noted in multiple form fields that the plaintiff could return to work with "intermittent leave," which he described as "brief" breaks to recover from anxiety attacks and one or two days off per month for the plaintiff to manage her depression. *See Tchankpa v. Ascena Retail Grp., Inc.*, 915 F.3d 805, 812-14 (6th Cir. 2020) (holding plaintiff could not prevail on failure to accommodate claim because the documentation he provided to support his request to work from home did not support the requested accommodation and, if anything, confirmed plaintiff could do his job without working from home).

The forms the plaintiff presented during her deposition do not alter the analysis.[7]  The amendment purportedly made on the last page of one form, stating the plaintiff required a period of continuous leave until April 11, 2019, was dated March 21, 2019, *after* Broadspire denied the plaintiff's request for a leave of absence, after T-Mobile communicated that denial to the plaintiff, and *after* T-

---

[7] For purposes of this memorandum opinion, the court assumes the versions of the forms the plaintiff presented during her deposition are authentic and overlooks the internal discrepancies contained therein.

Mobile discharged the plaintiff.  The plaintiff no longer was a T-Mobile employee at the time she purportedly provided documentation supporting her request for a leave of absence, and therefore, T-Mobile had no obligation to provide an accommodation to her at that point.  *See Scott v. Mem'l Sloan-Kettering Cancer Ctr.*, 190 F. Supp. 2d 590, 595-96 (S.D.N.Y. 2002) (holding plaintiff could not prevail on failure to accommodate claim because ADA only applies to employees and plaintiff had been discharged before she requested the accommodation at issue); *Delaval v. PTech Drilling Tubulars, L.L.C.*, 824 F.3d 476, 481-83 (5th Cir. 2016) (holding plaintiff could not prevail on failure to accommodate claim where the documentation he purportedly provided to his employer to support his request was created almost one month after his discharge).

To the extent this determination is at odds with the plaintiff's testimony she provided the amendment to Broadspire or T-Mobile prior to her discharge, the testimony does not create a *genuine* issue of fact as to the timing of the provision. "It is true [courts] construe the facts in the light most favorable to the non-moving party.  But when 'opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it,' a court should not adopt the contradicted version for purposes of ruling on a motion for summary judgment." *Singletary v. Vargas*, 804 F.3d 1174, 1183 (11th Cir. 2015) (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007)).  "This is so because when the non-

movant's assertion is 'so utterly discredited' by the record, no 'genuine' dispute of material fact exists sufficient to prompt an inference on behalf of the non-movant." *Id.* (quoting *Scott*, 550 U.S. at 380); *see also Whitehead v. Burnside*, 403 F. App'x 401, 403 (11th Cir. 2010) ("Self-serving statements by a plaintiff do not create a question of fact in the face of contradictory, contemporaneously created medical records."). As stated, the amendment was dated March 21, 2019. Notwithstanding the plaintiff's testimony, it is not possible that she provided the amendment to Broadspire or T-Mobile any earlier than that date. No reasonable fact-finder could conclude otherwise.

The plaintiff's assertion she had been granted one or more leaves of absence in the past does not alter the analysis, either. It is possible a past request, unlike the present request, was supported by documentation from a health care provider that demonstrated a leave of absence was necessary for the plaintiff to do her job. Even if that is not the case – in other words, even if T-Mobile granted a past request for leave without any showing of necessity by the plaintiff – T-Mobile was not obligated to grant the present request solely on the basis of its past accommodation. The Eleventh Circuit has rejected this argument. *See D'Onofrio*, 964 F.3d at 1022 ("[E]ven if any employer has voluntarily provided accommodations to the employee historically, that employer is not obligated to continue providing them and can discontinue such when they exceed what is legally required under the ADA.");

13

*Holbrook v. City of Alpharetta*, 112 F.3d 1522, 1528 (11th Cir. 1997) (holding employer's decision to cease making accommodations that may have exceeded that which law required did not violate ADA).

Moreover, to the extent the plaintiff sought a leave of absence of an indefinite duration, the requested accommodation was not reasonable for the additional reason that it would not allow her to resume her job within a sufficiently certain and close period of time. "[A] leave of absence might be a reasonable accommodation in some cases," if it would allow an employee to continue work "in the immediate future." *Wood v. Green*, 323 F.3d 1309, 1314 (11th Cir. 2003). Conversely, the accommodation is not reasonable if it would allow an employee to resume her job only "at some uncertain point in the future." *Id.* In other words, T-Mobile was not required to grant the plaintiff an open-ended period of leave, even if the plaintiff's psychiatrist had endorsed such accommodation. *See id.* (holding that under second prong of failure to accommodate analysis employee's request for indefinite leave of absence was not reasonable, even though employer had granted employee periods of indefinite leave in the past); *Billups v. Emerald Coast Util. Auth.*, 714 F. App'x 929, 935-36 (11th Cir. 2017) (holding that under second prong of failure to accommodate analysis employee's open-ended request for leave was not reasonable).

For the reasons stated above, the plaintiff's accommodation claim fails.

### b. Discriminatory Discharge Claim

A plaintiff can establish a discriminatory discharge claim under the ADA with direct or circumstantial evidence. *Wascura v. City of South Miami*, 257 F.3d 1238, 1242, 1242 n.2 (11th Cir. 2001). "Direct evidence is evidence, that, if believed, proves the existence of a fact without inference or presumption." *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1086 (11th Cir. 2004) (internal quotation marks omitted and alterations adopted), *abrogated in part on other grounds by Lewis v. Union City, Georgia*, 918 F.3d 1213, 1218 (11th Cir. 2019).[8] "Only the most blatant remarks, whose intent could mean nothing other than to discriminate . . . constitute direct evidence of discrimination." *Van Voorhis v. Hillsborough Cty. Bd. of Cty. Comm'rs*, 512 F.3d 1296, 1300 (11th Cir. 2008) (internal quotation marks omitted and alteration adopted) (holding manager's statement he "didn't want to hire an old pilot" was direct evidence of age discrimination); *see also Dixon v. The Hallmark Cos., Inc.*, 627 F.3d 849, 855 (11th Cir. 2010) (noting Eleventh Circuit has held documents stating "Fire Early – he is too old" and 'Fire Rollins – she is too old" were direct evidence of age discrimination). Evidence that suggests, but does not prove, a discriminatory motive is circumstantial evidence. *Burrell v. Bd. of Trs. of*

---

[8] The Eleventh Circuit applies the law developed in cases addressing discrimination under Title VII of the Civil Rights Act of 1964 ("Title VII"), the Age Discrimination in Employment Act of 1967, and the ADA, interchangeably. *Rizo v. Alabama Dep't of Hum. Res.*, 228 F. App'x 832, 835 (11th Cir. 2007).

*Georgia Military Coll.*, 125 F.3d 1390, 1393-94 (11th Cir. 1997).  The plaintiff here has not come forward with any direct evidence of discriminatory discharge.

When a plaintiff must rely on circumstantial evidence to establish a discriminatory discharge claim, the *McDonnell Douglas*[9] burden-shifting framework applies.  *Wascura*, 257 F.3d at 1242; *Cleveland v. Home Shopping Network, Inc.*, 369 F.3d 1189, 1193 (11th Cir. 2004).  The plaintiff first must establish a *prima facie* case of discrimination.  *Cleveland*, 369 F.3d at 1193.  She may establish the third element of her *prima facie* case by introducing evidence of a "comparator."  *Hill v. Branch Banking and Tr. Co.*, 264 F. Supp. 3d 1247, 1262 (N.D. Ala. 2017).  A "comparator" is a non-disabled employee otherwise "similarly situated [to the plaintiff] in all material respects" who received more favorable treatment.  *See Lewis*, 918 F.3d at 1218 (clarifying "comparator" analysis in context of Title VII race discrimination claim).  If the plaintiff establishes a *prima facie* case, a presumption of discrimination arises and the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason for the plaintiff's discharge. *Cleveland*, 369 F.3d at 1193.  A defendant's articulation of a legitimate, non-discriminatory reason for the plaintiff's discharge eliminates the inferential presumption of discrimination, and the plaintiff is left with the ultimate burden of proving the defendant discharged her because of her disability, which she may do

---

[9] *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

by showing the defendant's proffered reason is "unworthy of credence" and a pretext for discrimination. *Id.*

The *McDonnell Douglas* burden-shifting framework "is not the *sine qua non* for a plaintiff to survive summary judgment in a discrimination case." *Sims v. MVM, Inc.*, 704 F.3d 1327, 1333 (11th Cir. 2013). "Instead, 'the plaintiff will always survive summary judgment if [s]he presents circumstantial evidence that creates a triable issue concerning the employer's discriminatory intent.'" *Id.* (quoting *Smith v. Lockheed Martin Corp.*, 644 F.3d 1321, 1328 (11th Cir. 2011)). "A triable issue of fact exists 'if the record, viewed in the light most favorable to the plaintiff, presents a convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination by the decisionmaker.'" *Id.* (quoting *Smith*, 644 F.3d at 1328).

The plaintiff here has not come forward with evidence of a comparator. Moreover, T-Mobile has articulated a legitimate, non-discriminatory reason for the plaintiff's discharge – that she did not return to work – and the plaintiff has failed to show the proffered reason is "unworthy of credence" and a pretext for discrimination. *See El-Saba v. Univ. of South Alabama*, 738 F. App'x 640, 647 (11th Cir. 2018) (holding employee's failure to return to work after denial of his medical leave request, which was unsupported by evidence of medical need, was a legitimate, non-discriminatory reason for his discharge). The forms the plaintiff presented

during her deposition that contained a purported amendment reflecting the plaintiff required a continuous period of leave until April 11, 2019, do not cast doubt on T-Mobile's stated reason for discharging the plaintiff.  As discussed, the purported amendment was made on March 21, 2019, *after* T-Mobile discharged the plaintiff. The date of the purported amendment precludes the plaintiff's forms from serving as evidence of pretext.  Accordingly, the plaintiff's discriminatory discharge claim fails at multiple steps of the *McDonnell Douglas* burden-shifting framework.  The plaintiff likewise has failed to come forward with a "convincing mosaic" of circumstantial evidence that would allow a jury to make an inference outside the context of the *McDonnell Douglas* burden-shifting framework that T-Mobile discharged the plaintiff because of her disability.

### 2. ADA Retaliation Claim

The ADA also prohibits an employer from retaliating against an employee who has opposed an act or practice made unlawful under the ADA.  § 12203(a).  A plaintiff may establish a retaliation claim under the ADA with direct or circumstantial evidence.  *Batson v. Salvation Army*, 897 F.3d 1320, 1328-29 (11th Cir. 2018).  The plaintiff here has not come forward with any direct evidence of retaliatory discharge.  When a plaintiff must rely on circumstantial evidence to establish a retaliation claim under the ADA, the *McDonnell Douglas* burden-shifting framework applies.  *Id.* at 1328-29.  A plaintiff establishes a *prima facie* case of

retaliation under the ADA by showing (1) she engaged in statutorily protected conduct, (2) she suffered an adverse employment action, and (3) that a causal connection exists between the two. *Id.* at 1329. "The third element requires a showing of but-for causation." *Frazier-White v. Gee*, 818 F.3d 1249, 1258 (11th Cir. 2016) (citing *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013)). This means a plaintiff must show "the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." *Nassar*, 570 U.S. at 360. If the plaintiff establishes a *prima facie* case, the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason for the adverse employment action. *Batson*, 897 F.3d at 1329. If the defendant does so, the burden shifts back to the plaintiff to show the proffered reason was pretext for discrimination. *Id.* The Eleventh Circuit has not considered in a published opinion whether the "convincing mosaic" theory applies in the context of a retaliation claim, although it has assumed in unpublished opinions that the theory applies. *Bailey v. Metro Ambulance Servs., Inc.*, 992 F.3d 1265, 1273 n.1 (11th Cir. 2021).

The plaintiff here contends T-Mobile discharged her in retaliation for filing a charge of discrimination with the U.S. Equal Employment Opportunity Commission in 2018. She cites no evidence that would allow the inference the 2018 EEOC charge was the but-for cause of her discharge in March 2019 and makes no substantive argument in relation to the causation element of a *prima facie* case of ADA

retaliation beyond bare legal conclusions.

The court acknowledges that "where a decision-maker becomes aware of protected conduct, a close temporal proximity between the decision-maker's acquisition of that knowledge and an adverse employment action will generally be enough to create a factual issue on the causation element." *Singleton v. Pub. Health Tr. of Miami-Dade Cnty.*, 725 F. App'x 736, 738 (11th Cir. 2018). "But where . . . there is no other evidence tending to show causation, the temporal proximity must be 'very close.'" *Id.* (quoting *Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1364 (11th Cir. 2007)). "[The Eleventh Circuit] ha[s] held that a period as much as one month between the protected expression and the adverse action is not too protracted," *Higdon v. Jackson*, 393 F.3d 1211, 1219 (11th Cir. 2004) (citing *Wideman v. Wal-Mart Stores, Inc.*, 141 F.3d 1453, 1457 (11th Cir. 1998)), while "[t]he [Supreme] Court [has] cited with approval decisions in which a three to four month disparity was found to be insufficient to show causal connection" *id.* (citing *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273-74 (2001)). The plaintiff here does not specify when in 2018 she filed an EEOC charge, and review of the record does not provide any clarification. The plaintiff also fails to show the T-Mobile decisionmaker vis-à-vis her discharge knew of her 2018 EEOC charge and, if so, when that person acquired the knowledge. Absent this information, there is no basis on which to determine temporal proximity allows for the inference of a causal

connection between the EEOC charge and the plaintiff's discharge.

Even if the plaintiff were able to satisfy the third element of a *prima facie* case of ADA retaliation, as discussed above, T-Mobile has articulated a legitimate, non-discriminatory reason for discharging the plaintiff, which the plaintiff has failed to rebut.   Accordingly, the plaintiff's retaliatory discharge claim, like her discriminatory discharge claim, fails at multiple steps of the *McDonnell Douglas* burden-shifting framework.  The plaintiff likewise has failed to come forward with a "convincing mosaic" of circumstantial evidence that would allow a jury to make an inference outside the context of the *McDonnell Douglas* burden-shifting framework that T-Mobile discharged the plaintiff in retaliation for filing the 2018 EEOC charge.

## V. Conclusion

For the reasons stated above, the plaintiff's motion for summary judgment (Doc. 41) is due to be **DENIED**; while the defendant's motion to strike (Doc. 48) is due to be **DENIED**, its motion for summary judgment (Doc. 46) is due to be **GRANTED**; and this action is due to be **DISMISSED WITH PREJUDICE**.  A separate final judgment will be entered.

**DONE** this 22nd day of September, 2022.

STACI  G. CORNELIUS
U.S. MAGISTRATE JUDGE